IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

REBECCA KAUFFMAN                :            CIVIL ACTION
                                :
         v.                     :
                                :
ST. MARY MEDICAL CENTER         :            NO. 13-4705

MEMORANDUM

Bartle, J.                                   September 22, 2014

Plaintiff Rebecca Kauffman ("Kauffman") has filed this action against her former employer, defendant St. Mary Medical Center ("St. Mary"), under the Americans with Disabilities Act ("ADA"), 42 U.S.C. § 12101 et seq., Pennsylvania Human Relations Act ("PHRA"), 43 Pa. Cons. Stat. Ann. § 951 et seq., and Family and Medical Leave Act ("FMLA"), 29 U.S.C. § 2601 et seq.  Now before the court is the motion of St. Mary for summary judgment under Rule 56 of the Federal Rules of Civil Procedure.

Kauffman was employed as an overnight unit clerk from 2007 until October 25, 2012 when her employment was terminated.  While St. Mary asserts that it fired Kauffman because she repeatedly had been caught sleeping on the job, Kauffman urges that she was fired as a result of numerous health-related issues which include chronic migraines, vertigo, a sleep disorder, neurological problems, chronic fatigue, and light sensitivity.  She additionally claims that St. Mary failed to provide her with reasonable accommodations and that it terminated her in retaliation for her making those requests.

I.

Summary judgment is appropriate "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a); see also Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986). Rule 56(c) states:

> A party asserting that a fact cannot be or is genuinely disputed must support the assertion by ... citing to particular parts of materials in the record, including depositions, documents, electronically stored information, affidavits or declarations, stipulations ..., admissions, interrogatory answers, or other materials; or ... showing that the materials cited do not establish the absence or presence of a genuine dispute, or that an adverse party cannot produce admissible evidence to support the fact.

Fed. R. Civ. P. 56(c)(1).

A dispute is genuine if the evidence is such that a reasonable factfinder could return a verdict for the non-moving party. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 254 (1986). Summary judgment is granted where there is insufficient record evidence for a reasonable factfinder to find for the plaintiffs. Id. at 252. "The mere existence of a scintilla of evidence in support of the plaintiff's position will be insufficient; there must be evidence on which the factfinder could reasonably find for the plaintiff." Id.

-2-

When ruling on a motion for summary judgment, we may only rely on admissible evidence.  See, e.g., Blackburn v. United Parcel Serv., Inc., 179 F.3d 81, 95 (3d Cir. 1999).  We view the facts and draw all inferences in favor of the nonmoving party.  In re Flat Glass Antitrust Litig., 385 F.3d 350, 357 (3d Cir. 2004).  However, "an inference based upon a speculation or conjecture does not create a material factual dispute sufficient to defeat entry of summary judgment."  Robertson v. Allied Signal, Inc., 914 F.2d 360, 382 n.12 (3d Cir. 1990).

II.

The following facts are undisputed or viewed in the light most favorable to Kauffman as the nonmovant.  Kauffman was employed by St. Mary as an overnight unit clerk in its Critical Care Unit from July 9, 2007 until her termination on October 25, 2012.  She was supervised in that role by Kathy Krol ("Krol"), a Nurse Manager, starting in 2008.  Donna Marino ("Marino") was the Director of Human Resources at the time.

Kauffman suffers from a number of symptoms related to a variety of illnesses.  Those symptoms include chronic migraines, vertigo, seizure-related problems, a sleep disorder, neurological problems, and other complications such as fatigue and light sensitivity.

Kauffman had first been diagnosed with vertigo in 1996.  In July 2011, she was seen by her doctor after a fainting episode

-3-

that she experienced while she was at church.  In September 2011, Kauffman underwent a sleep study, the results of which suggested that narcolepsy or hypersomnia related to the central nervous system should be further investigated.  She was assessed in November 2011 for hypersomnia, snoring, insufficient sleep syndrome, and a kidney stone.  After this visit, Kauffman was not seen by a health care professional for any relevant medical issue until November 6, 2012 almost a year later and subsequent to her termination.

In late September or early October 2012, Krol observed that Kauffman was not feeling well when she visited Kauffman's work station.  Kauffman explained that she was dealing with fatigue, dizziness, lightheadedness, light and sound sensitivity, migraines to the point of throwing up, and fainting episodes. She said that her "doctor was looking into it and making referrals."  She further told Krol that she "may or may not" need to take a night or two off in order to have diagnostic tests performed in the future.  While her medical records make it clear that she did not in fact see a doctor in late September or early October, the record supports an inference that her symptoms were getting increasingly severe and that she was in the process of seeking medical attention at that time.

In the weeks after this conversation, Kauffman first began to face formal discipline for allegedly falling asleep on the job. Earlier she had been accused of sleeping on a number of occasions

-4-

without further consequences.  Both contemporaneously and in this litigation, Kauffman has consistently maintained that she never fell asleep at work but rather had been nauseous or simply resting her eyes for a few seconds when others approached her.  Nonetheless, it is uncontested that Krol and Marino had a good-faith basis to believe that she was asleep on these occasions as a result of reports to that effect from other employees.

On October 10, 2012, Chris Gasperi, a Clinical Lead, believed that Kauffman was asleep and reported her to Krol. Kauffman denied the accusation.  The next day, Krol issued Kauffman a "first and final" written warning which stated that she could be terminated for sleeping on the job.  According to Kauffman, the initiation of formal discipline was in retaliation for her voicing her health concerns to Krol, with whom she had already experienced increasing antagonism over a disagreement about whether Kauffman could turn off a fluorescent light at her desk that triggered her headaches.  Kauffman annotated the October 11 warning, writing: "Have spoken about talking to PCP & neurologist to find solutions to issue (in progress)!!"

When Krol issued the warning she asked Kauffman to provide medical documentation to substantiate the symptoms of which she complained.  It is unclear whether medical records were requested or if Krol only required a doctor's note.  Either way, Kauffman began the process of obtaining her records from her primary care physician

-5-

shortly thereafter but was informed that it would take a week and a half to two weeks to gather and release them.

Kauffman was again written up for sleeping during work hours on October 24, which would serve as the basis for her termination. A coworker purportedly observed Kauffman with her head down on her desk and reported it to a supervisor, Ersie Abejo. Kauffman explained to Abejo that she had been vomiting due to a migraine and was simply resting her eyes which had been closed only for three or four seconds. She further explained that she was suffering from light sensitivity and dizziness in addition to her migraines. Abejo sent Kauffman home and stated that she would see Kauffman when she next came in for work. Abejo then reported to Krol that she saw Kauffman with her head down and her eyes closed. Krol called Kauffman the following afternoon and told her that she was recommending her for termination for sleeping on the job. She instructed Kauffman to appear at Human Resources the next morning, October 25, 2012, for a meeting.

Kauffman, Krol, and Marino, the Director of Human Resources, were present in the meeting, where Kauffman, as before, categorically denied that she had been sleeping on the job. By that time she had obtained her medical records which she attempted to present to Marino. Marino refused to look at them, however, because patient confidentiality laws prevented her from reviewing the

-6-

records and because their minds were made up anyway.[1]  Kauffman was terminated at the conclusion of the meeting.

III.

We begin with Kauffman's claims of interference and retaliation under the FMLA.  The FMLA provides that "an eligible employee shall be entitled to a total of 12 workweeks of leave during any 12-month period ... [b]ecause of a serious health condition that makes the employee unable to perform the functions of the position of such employee."  29 U.S.C. § 2612(a)(1)(D).  An eligible employee is one who has been employed by the employer for at least 12 months and who has provided at least 1,250 hours of service with the employer during the previous 12-month period, subject to certain exclusions inapplicable here.  Id. § 2611(2). The employer may not "interfere with, restrain, or deny the exercise of or the attempt to exercise" the employee's right to FMLA leave. Id. § 2615(a)(1).  Retaliation against an employee's invocation of FMLA rights is also prohibited.  See 29 C.F.R. § 825.220(c); Erdman v. Nationwide Ins. Co., 582 F.3d 500, 509 (3d Cir. 2009).

A plaintiff is only protected from interference with or retaliation against leave which is sought for the reasons permitted under the FMLA.  See Sarnowski v. Air Brooke Limousine, Inc., 510 F.3d 398, 401 (3d Cir. 2007); Lichtenstein v. Univ. of Pittsburgh

---

[1]  Marino had previously been made aware of Krol's request for medical documentation in an email from Krol on October 17, 2012.

<u>Med. Ctr.</u>, 691 F.3d 294, 301-02 (3d Cir. 2012).  As noted above, the FMLA only entitles an eligible employee to take leave to address a "serious health condition" or certain other health- or family-related issues.  29 U.S.C. § 2612(a)(1).  The latter are not relevant in this lawsuit.  In the present matter, St. Mary argues that Kauffman's FMLA interference and retaliation claims fail at the outset because Kauffman did not suffer from any "serious health condition" at the time of her termination.

A "serious health condition" is, in relevant part, "an illness, injury, impairment, or physical or mental condition that involves ... continuing treatment by a health care provider."  <u>Id.</u> § 2611(11)(B).  The Department of Labor has promulgated regulations elaborating further on the definition.  29 C.F.R. §§ 825.113-15. The regulations provide:

> A serious health condition involving continuing treatment by a health care provider includes any one or more of the following:
>
> (a) Incapacity and treatment.  A period of incapacity of more than three consecutive, full calendar days, and any subsequent treatment or period of incapacity relating to the same condition....
> (b) Pregnancy or prenatal care.   Any period of incapacity due to pregnancy, or for prenatal care....
> (c) <u>Chronic conditions.  Any period of incapacity or treatment for such incapacity due to a chronic serious health condition.   A chronic serious health condition is one which:</u>
> > (1) Requires periodic visits (defined as at least twice a year) for treatment by a health care provider, or by a nurse

> under direct supervision of a health care
> provider;
>         (2) Continues over an extended period
> of time (including recurring episodes of a
> single underlying condition); and
>         (3) May cause episodic rather than a
> continuing period of incapacity (e.g.,
> asthma, diabetes, epilepsy, etc.).
> ....
> (f) Absences attributable to incapacity
> under paragraph (b) or (c) of this section
> qualify for FMLA leave even though the employee
> or the covered family member does not receive
> treatment from a health care provider during
> the absence, and even if the absence does not
> last more than three consecutive, full calendar
> days.  For example, an employee with asthma may
> be unable to report for work due to the onset
> of an asthma attack or because the employee's
> health care provider has advised the employee
> to stay home when the pollen count exceeds a
> certain level.  An employee who is pregnant may
> be unable to report to work because of severe
> morning sickness.

29 C.F.R. § 825.115 (emphasis added).  A serious health condition

must exist as of the time FMLA leave was requested or taken.  See

Hansler v. Lehigh Valley Health Network, Civil Action No. 13-3924,

2014 WL 1281132, at *7 (E.D. Pa. Mar. 28, 2014); Navarro v. Pfizer

Corp., 261 F.3d 90, 96 (1st Cir. 2001).

     Kauffman simply argues that she suffers from a "chronic

serious health condition" as that term is defined in 29 C.F.R.

§ 825.115(c).  As the regulation quoted above states, such a

condition must, among other things, "[r]equire[] periodic visits

(defined as at least twice a year) for treatment by a health care

provider, or by a nurse under direct supervision of a health care

-9-

provider."  29 C.F.R. § 825.115(c)(1).  In the year before Kauffman
voiced her possible need for time off for diagnostic testing in late
September or early October 2012, she was seen by a health care
provider only once to address her relevant symptoms.  After she was
evaluated by a physician for various sleep disorders on November 14,
2011, Kauffman's next visit to treat the symptoms at issue here was
on November 6, 2012 after she was terminated.  There is no evidence
as to when Kauffman took steps to schedule this November 2012
appointment.

        Kauffman did not visit a health care provider to treat her
symptoms at least twice in the year before her request for time off
in late September or early October 2012.  Nor does she make any
argument that her illnesses otherwise required such frequent visits
even though she did not see her health care providers that often.
She therefore did not have a "chronic serious health condition" as
that term is defined under § 825.115(c) during the relevant time
period.  29 C.F.R. § 825.115(c)(1).  This conclusion is consistent
with the purposes of the FMLA, which does not exist to provide leave
for any employee who might have minor or sporadic maladies but
rather to address the "inadequate job security for employees who
have serious health conditions."  See 29 U.S.C. § 2601(4); S. Rep.
No, 103-3, at 30 (1993).  Summary judgment will be granted in favor
of St. Mary and against Kauffman with respect to her FMLA claims.

IV.

We still have before us St. Mary's motion for summary
judgment as to Kauffman's claims of discrimination, retaliation, and
failure to accommodate under the ADA and PHRA.  On these claims,
having carefully reviewed the arguments of the parties and the
relevant records, we conclude that genuine disputes of material fact
exist.  Accordingly, summary judgment will be denied with respect to
Kauffman's ADA and PHRA claims.